UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES R. COAKLEY,

      Plaintiff,      Case Number 23-10977
v.               Honorable David M. Lawson

U.S. DEPARTMENT OF LABOR, OLMS,

      Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

On April 26, 2023, James R. Coakley, a retired member of defendant International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), filed his complaint in this case seeking judicial review of a decision by the United States Department of Labor, Office of Labor-Management Standards (OLMS), which rejected a challenge by Coakley to decisions by the UAW and the court-appointed monitor that barred retired members of the Union from running in the 2023 direct election of the Union's International Executive Board (IEB). Coakley brought the same dispute before this Court previously when he filed a motion seeking an interpretive ruling by the Court overturning the same interpretations of the UAW charter barring retirees from standing for the Union's highest elected positions. *See* Op. & Order Granting in Part and Denying in Part Mot. for Interpretive Ruling, *United States v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, No. 20-13293, 2022 WL 2387727, at *4 (E.D. Mich. July 1, 2022). In that prior ruling, the Court upheld the same interpretive rulings that Coakley now challenges for a second time via his administrative appeal.

The Secretary of Labor responded to the complaint by filing a motion to dismiss arguing that Coakley is barred by principles of collateral estoppel from relitigating the same questions previously presented to and decided by this Court, and that the Secretary's decision rejecting his

challenge to the interpretive rulings on candidate eligibility was well reasoned and supported by good grounds recited in the Statement of Reasons rejecting Coakley's election challenge. The Court agrees that Coakley is barred from relitigating for a second time the same questions about candidate qualifications that previously were presented to this Court and decided adversely to him, and that the Secretary's decision was not arbitrary or capricious. The issues presented are addressed adequately by the parties' briefing, and oral argument will not aid in the disposition of the motion. The motion therefore will be decided on the papers submitted. E.D. Mich. LR 7.1(f)(2). The motion to dismiss will be granted.

I.

On December 14, 2020, the government filed a complaint against the UAW in *United States v. UAW*, No. 20-13293 (E.D. Mich.), under the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 401 *et seq.* The Union represents hundreds of thousands of non-managerial workers in automobile manufacturing and other industries throughout Michigan, the United States, and the world. The UAW's International Executive Board is the managing body of the UAW, which is comprised of a president, secretary, three vice presidents, and eight regional directors. The board governs the union's affairs by, among other things, setting policy, imposing discipline, approving or suspending by-laws of local bargaining units, and interpreting and enforcing the UAW's constitution. UAW locals, aided and overseen by the umbrella authority of the international union, negotiate collective bargaining agreements on behalf of members in workplaces around the country and the world, according to local circumstances.

Contemporaneously with the complaint, the parties jointly filed a motion for entry of a consent decree embodying terms of an agreement that they had reached before the suit was filed,

which provided for injunctive restrictions against the Union and its officers, and also for the appointment of a Monitor and other officials to keep tabs on the union's activities and report on the defendant's compliance with the consent decree and applicable federal laws. On January 29, 2021, after it had received no opposition to the joint motion, the Court entered the proposed consent decree. *See United States v. UAW*, No. 20-13293, ECF No. 10.

One main feature of the decree required the Union to hold a referendum by secret ballot of all members to address the question whether the Union should change the method of electing IEB officers to a "one-member, one-vote" direct election rather than having officers selected by a convention of delegates. The referendum was held, and the Union's members voted 63% in favor of changing the mode of election for officers. On January 31, 2022, the Court issued an order granting a joint unopposed motion by the parties to approve the referendum results. The Court also set a deadline of July 30, 2022 for full implementation of the new election method including enactment of necessary changes to the UAW constitution. The consent decree further provided that, after the member referendum considering the change in election modes, "the Monitor . . . shall ensure that the election of the members of the IEB of the UAW shall follow the requirements of the UAW Constitution, and all applicable state and federal laws, and this decree." Consent Decree, ECF No. 10, PageID.126.

The consent decree also provided for the appointment of a Monitor to oversee the Union's compliance with its terms. On May 12, 2021, the Court granted an unopposed joint motion to install Neil M. Barofsky in that office. Among other things, the consent decree empowered the Monitor to review the conduct of officers and principal employees of the Union, and to oversee the elections of officers. The consent decree also provided for the appointment of an Adjudications Officer, who is empowered to review actions by the Monitor upon timely challenge by any

interested party. On September 10, 2021, the Court granted the government's unopposed motion to appoint Gil Soffer as the Adjudications Officer.

The consent decree further stated that any "person disallowed from running for International Office by the Monitor may appeal the Monitor's action to the Adjudications Officer by filing a written appeal within seven days of such action by the Monitor," and that the disappointed candidate thereafter "may appeal to the Court the Monitor's or the Adjudications Officer's decision regarding his or her candidacy within 14 days of the decision being appealed." Consent Decree ¶¶ 47-48, PageID.127. "The Monitor's or Adjudications Officer's decisions . . . shall be reviewed by this Court under the substantial evidence standard set forth in 5 U.S.C. § 706(2)(E)," a section of the Administrative Procedures Act (APA). *Id.* ¶ 48, PageID.128. That statute specifies that the "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of [a challenged action] [and] shall . . . hold unlawful and set aside [any] action, findings, and conclusions found to be. . . unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party." *Id.* § 706.

During the 38th Constitutional Convention held by the UAW in July 2022, the Union's charter was amended to implement the referendum by changing the election method. Once the referendum results were approved by the Court, the Monitor set about issuing rules to govern the prospective election cycle under the new direct election method. During that process, plaintiff James R. Coakley inquired of the Monitor whether retired union members would be permitted to run for IEB positions. The Monitor's response indicated that "[a]fter soliciting the views of the UAW and other interested parties, including the advocacy group Unite All Workers for Democracy

('UAWD'), as well as Mr. Coakley and other retirees, the Monitor concluded that both sides had meritorious arguments, [as] a result of an ambiguity in the UAW Constitution on this issue." The Monitor then determined that the appropriate course would be to refer the question to the Union's President and IEB to interpret the "ambiguous" provisions and issue a policy position on whether the Union's constitution permits retired members to hold IEB offices. The Union's President considered the question and, on March 24, 2022, issued a position letter stating that retired members are not eligible to campaign for or hold any position on the IEB. On April 1, 2022, the IEB voted to endorse that position.

The Monitor subsequently informed Coakley and other interested parties of the right to appeal the ruling by the Union's President and IEB barring retired members from election to any IEB position. On April 12, 2022, Coakley presented an appeal of the ruling to the Adjudications Officer. On April 22, 2022, the Adjudications Officer issued a decision finding that the Monitor's decision to refer the question to the Union for an interpretive ruling was proper, and the Union's construction of the relevant provisions was reasonable.

On April 27, 2022, Coakley filed his motion in *United States v. UAW*, No. 20-13293, seeking review by this Court of the decisions by the Monitor and Adjudications Officer. In his motion, Coakley argued that the Monitor acted improperly by deferring to the Union to interpret the charter provisions concerning candidate eligibility, and that the construction of the Union's constitution adopted by the Union and the Monitor was unreasonable and disregarded plain language that Coakley said made retired members fully eligible to hold the Union's highest elected offices.

On May 11, 2022, notwithstanding the pendency of the motion for judicial review, the Monitor issued the Official Rules for the 2022 International Office Election of the UAW, which

stated that retired members would be eligible to vote for IEB offices, Rules § 2-5, but "retired members are not eligible to run for International Union Office," Rules § 3-1. On July 1, 2022, the Court issued an opinion granting in part Coakley's motion for an interpretive ruling, rejecting several procedural and jurisdictional objections by the Union and the Monitor, and affirming on the merits the Monitor's interpretive decision and his adoption of the Official Rules for the election. On August 9, 2022, Coakley filed a complaint with the Department of Labor challenging the conduct of the election under the Official Rules that excluded retirees from running for IEB positions. The Union undertook the first election of IEB members by the new method during October and November 2022. Coakley sought to run for the office of IEB President, but his candidacy was disqualified in accordance with the election rules. On December 20, 2022, after investigating Coakley's complaint, the Secretary of Labor issued a decision and a statement of reasons concluding that no violation of the Labor-Management Reporting and Disclosure Act (LMRDA) had occurred that likely affected the outcome of the election. The ruling indicated that the Secretary would not take legal action to overturn the election, and the file was closed. On April 26, 2023, Coakley filed his complaint in this case seeking review of the Secretary's decision under the APA.

II.

The defendant has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Coakley has not stated a claim that warrants relief. When evaluating a motion under Rule 12(b)(6), the Court is called upon to determine if the "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). When reviewing the motion, the Court "must construe the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as true." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)).

The LMRDA incorporates two distinct remedial avenues for union members to present grievances about the conduct of union elections. *First*, Title I guarantees union members "equal rights . . . to nominate candidates, [and] to vote in elections or referendums of the labor organizations." 29 U.S.C. § 411(a)(1). If a union member believes that right to have been violated, he or she "may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412. *Second*, Title IV addresses the timing and manner in which local, national and international union elections of officers are to be conducted. 29 U.S.C. § 481 *et seq.*; *see also Am. Fed'n of Musicians v. Wittstein*, 379 U.S. 171, 181 (1964) ("Title IV contains elaborate statutory safeguards for the election of union officers."); *Harrington v. Chao*, 280 F.3d 50, 53 (1st Cir. 2002) ("Title IV of the LMRDA . . . establishes minimum standards for the election of union officers." (citation omitted)). To enforce rights granted under Title IV, the union member must file a complaint with the Secretary of Labor (after completing certain procedural requirements). 29 U.S.C. § 482(a). That is the only enforcement route under that title; district court litigation is not an option. 29 U.S.C. § 483 ("The remedy provided by this subchapter for challenging an election already conducted shall be exclusive."); *Local No. 82, Furniture & Piano Moving Drivers v. Crowley*, 467 U.S. 526, 540 (1984) (Title IV "'sets up an exclusive method for protecting Title IV rights,' and Congress 'decided not to permit individuals

to block or delay union elections by filing federal-court suits for violations of Title IV.'") (quoting *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964)).

There is no dispute that the present suit implicates guarantees of election integrity embodied by Title IV of the LMRDA. The Secretary does not raise any procedural objections to Coakley's pursuit of his administrative appeal or the initiation of his suit in this Court. Instead, the Secretary's challenge to the complaint directly attacks the merits of the claim seeks to overturn the defendant's decision upholding the interpretation of the election rules.

"[I]n *Dunlop v. Bachowski*, 421 U.S. 560 (1975), [the Supreme Court] held that a decision by the Secretary not to pursue court action under Title IV is subject to limited review in the district court"; "[a]t the same time, [it] reaffirmed the Secretary's exclusive authority to challenge and, if successful, to supervise union elections." *Crowley*, 467 U.S. at 550 n.22 (citing *Dunlop*, 421 U.S. at 568-71, overruling *Dunlop* in part on other grounds). In *Dunlop*, the Court noted that its prior decisions "construing the LMRDA identif[ied] the congressional objectives and thus put the scope of permissible judicial review in perspective." *Dunlop*, 421 U.S. at 568-69 (quoting *Calhoon*, 379 U.S. at 140). When it passed the LMRDA, "Congress [had] decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest [and] decided not to permit individuals to block or delay union elections by filing federal-court suits." *Ibid.* "Congress' concern was to settle as quickly as practicable the cloud on the incumbents' titles to office, and in deliberately giving exclusive enforcement authority to the Secretary emphatically asserted a vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Id.* at 569 (cleaned up). "'Congress made suit by the Secretary the exclusive post-election remedy for two principal reasons: (1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2)

to centralize in a single proceeding such litigation as might be warranted.'" *Ibid.* (quoting *Trbovich v. Mine Workers*, 404 U.S. 528, 532 (1972)). "Congress intended to prevent members from pressing claims not thought meritorious by the Secretary, and from litigating in forums or at times different from those chosen by the Secretary. The statute gives the individual union members certain rights against their union, and 'the Secretary of Labor in effect becomes the union member's lawyer' for purposes of enforcing those rights.'" *Id.* at 569-70 (quoting *Trbovich*, 404 U.S. at 538-39).

"Two conclusions follow from this survey of [the Court's] decisions: (1) since the statute relies upon the special knowledge and discretion of the Secretary for the determination of both the probable violation and the probable effect, clearly the reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit; (2) therefore, to enable the reviewing court intelligently to review the Secretary's determination, the Secretary must provide the court and the complaining witness with copies of a statement of reasons supporting his determination." *Dunlop*, 421 U.S. at 571. "When action is taken by the Secretary it must be such as to enable a reviewing Court to determine with some measure of confidence whether or not the discretion, which still remains in the Secretary, has been exercised in a manner that is neither arbitrary nor capricious. It is necessary for him to delineate and make explicit the basis upon which discretionary action is taken, particularly in a case such as this where the decision taken consists of a failure to act after the finding of union election irregularities." *Ibid.* (cleaned up).

"The necessity that the reviewing court refrain from substitution of its judgment for that of the Secretary thus helps define the permissible scope of review." *Dunlop*, 421 U.S. at 572-73. "Except in what must be the rare case, the court's review should be confined to examination of the 'reasons' statement, and the determination whether the statement, without more, evinces that the

Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Ibid.* "Thus, review may not extend to cognizance or trial of a complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election." *Id.* at 573. "When the district court determines that the Secretary's statement of reasons adequately demonstrates that his decision not to sue is not contrary to law, the complaining union member's suit fails and should be dismissed, but [w]here the statement inadequately discloses his reasons, the Secretary may be afforded opportunity to supplement his statement." *Id.* at 574.

### III.

Coakley's complaint for judicial review fails to plead any plausible claim for relief for two reasons. First, the principle of collateral estoppel bars him from relitigating in this suit the same question that already was considered and finally decided by this Court when it ruled on his motion for an interpretive ruling. Second, the Secretary's reasoning for rejecting the election challenge was not so irrational as to render the decision arbitrary and capricious.

### A. Collateral Estoppel

The doctrine of collateral estoppel — also referred to as issue preclusion — consists of four elements: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Kosinski v. Comm'r of Internal Revenue*, 541 F.3d 671, 675 (6th Cir. 2008) (quotation omitted). Collateral estoppel may be raised as a defense in a pleading challenge under Rule 12(b)(6). *See Evans v. Pearson Enters., Inc.*, 434 F.3d

839, 849 (6th Cir. 2006) (affirming district court's grant of motion to dismiss on grounds of issue preclusion). This Court "may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

All of the requirements of collateral estoppel are satisfied in this case.

First, the issues presented in the earlier motion for an interpretive ruling and the issues presented in this lawsuit are precisely the same. Coakley's complaint states the sole question to be decided by the Court as follows: "Are retired members in good standing eligible to hold positions in the UAW that require grievance handling and/or collective bargaining responsibilities? If so, are retirees then eligible to run in IEB elections?" Compl., ECF No. 1, PageID.3. That is the same merits question that was presented to and resolved by the Court previously. *See United States v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, No. 20-13293, 2022 WL 2387727, at *6 (E.D. Mich. July 1, 2022) ("Coakley argues that the phrase 'all the privileges of membership' in Article 6, Section 19 of the Union's constitution is 'unambiguous,' and no further consideration is necessary to conclude from that expansive phrase that retired members must be allowed to stand for elections to the IEB the same as any other member. That position, however, overlooks the plainly exclusionary language immediately following, in the same sentence, that excludes retired members from participating in votes on matters impacting collective bargaining agreements or the initiation and cessation of strike actions. Plainly, the language of the instrument demonstrates that, in this instance, the term 'all' means somewhat less than 'each and every.'").

Second, the resolution of that question was necessary to this Court's ruling denying substantive relief on the motion for an interpretive ruling. As the Court held previously:

> The language of the UAW constitution does not expressly answer the question whether retired members may be elected to IEB offices, but it plainly suggests that retired members are not afforded rights to participate in or influence matters implicating collective bargaining. The Union and its Public Review Board have demonstrated that over a lengthy course of dealing they repeatedly have relied on this exclusionary principle to uphold policies by which retired members are not eligible to seek or hold offices with significant collective bargaining functions. The same principle reasonably was applied in this case by extending the policy to exclude retired members from holding positions on the IEB. That interpretation of the UAW constitution was fair and reasonable, and the decisions endorsing and affirming it were supported by substantial evidence.

*Id.* at *8.

Third, the decision on the motion for an interpretive ruling was a final decision on the merits of the controversy that Coakley then presented. Coakley did not appeal that ruling. The Court's decision on the motion was not a final judgment disposing of the civil enforcement suit, which was resolved instead by the consent decree. But that is of no consequence because all that is required is a final ruling on the issues to which preclusion applies. *Am. Postal Workers Union Columbus Area Loc. AFL-CIO v. U.S. Postal Serv.*, 736 F.2d 317, 319 (6th Cir. 1984) ("[T]here had been no final judgment in the . . . case, but such a judgment is not required so long as there has been a final decision with respect to the issue to be given preclusive effect.").

Fourth, there is no question that Coakley's motion in the UAW case was briefed profusely by all parties, and Coakley was afforded a full and fair opportunity to present all of the same arguments that he now raises once again in his complaint for judicial review.

Coakley is precluded from taking a second bite at the apple and attempting to relitigate in this suit the same question previously decided against him by this Court.

### B. Merits of Secretary's Decision

The Secretary's Statement of Reasons that was attached to the complaint also demonstrates that the decision not to pursue Coakley's election complaint was not arbitrary or capricious. The Secretary issued a four-page statement of reasons for the decision that discussed and addressed all

of Coakley's grievances relating to his disqualification. Statement of Reasons dated Dec. 22, 2022, ECF No. 1, PageID.22-26. The Secretary concluded that (1) the LMRDA was not violated by the Monitor's decision to defer to the Union's President and IEB to interpret the Union's charter in the first instance, (2) there was no "conflict of interest" that precluded the Union's then President from rendering a decision on the interpretive question, (3) there was no violation of the LMRDA where a prohibition on retirees running for IEB offices allegedly resulted in 59% of the union membership being barred as candidates, and (4) the restriction on retirees running for IEB positions did not violate the LMRDA notwithstanding the fact that the Union requires members of its own staff to retire at age 65. The central reasoning of the Secretary's decision covered all of the same arguments and cited many of the same legal authorities relied upon by the Court in its ruling on the motion for an interpretive ruling, and the Secretary's conclusion was anchored substantially by the same grounds. *See* Statement of Reasons, PageID.25 ("The rule is a manifestation of the UAW's policy of excluding retired members from positions with collective bargaining duties because retirees' primary interests extend to retirement benefits, potentially to the detriment of or in conflict with active employees' interest in wage rates, hours, working conditions, and other terms of active employment. [The cases cited] are distinguishable from the UAW candidate eligibility requirement at issue and do not compel the Department to find the UAW's rule unreasonable."). For the same reasons discussed and analyzed thoroughly in the Court's prior ruling, which the Court incorporates fully and relies upon herein, there was nothing arbitrary or capricious about that conclusion.

The Secretary also points out that Coakley's complaint contains certain additional allegations relating to events that occurred in 2023, after the Secretary's decision was issued in December 2022. Those circumstances, however, are immaterial to the Court's resolution of the

instant complaint for judicial review, which must be confined to consideration of the administrative record that was before the agency at the time of the decision. *Dep't of Com. v. New York*, --- U.S. ---, 139 S. Ct. 2551, 2556 (2019) (stating that a "court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record"). "[*Dunlop*] holds that the administrative record in a contest to a union election is the Secretary's statement of reasons." *Corner v. Walsh*, No. 22-1428, 2022 WL 2287559, at *1 (7th Cir. June 24, 2022). Circumstances not discussed in the Statement of Reasons or raised in the underlying complaint, and which obviously arose after the Secretary's decision was issued, are beyond the scope of the administrative proceeding, and such matters are not properly before the Court in this suit.

IV.

The plaintiff is barred by the principle of issue preclusion from relitigating in this civil action questions that he previously presented to this Court in his motion for an interpretive ruling. The Secretary's decision not to pursue the plaintiff's election challenge by filing an enforcement suit to overturn the election was not arbitrary or capricious. The claims pleaded in the complaint for judicial review of the agency action are without merit.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss (ECF No. 9) is **GRANTED**, and the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   March 15, 2024